UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLOBAL WEATHER PRODUCTIONS, LLC,

Plaintiff,

-v-

MCLAUGHLIN MEDIA MANAGEMENT LLC *d/b/a* M3 MEDIA MANAGEMENT,

Defendant.

25 Civ. 6981 (PAE) (KHP)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This action arises from a claim of copyright infringement by plaintiff Global Weather Productions LLC ("Global Weather") based on the unauthorized public posting of a video on a Facebook account. *See* Dkt. 9 (the "AC"). Defendant McLaughlin Media Management ("M3") has moved to dismiss the complaint on the grounds of impermissible claim splitting. Dkts. 25–27. The basis for the motion is that, in federal court in Texas, Global Weather is simultaneously pursuing claims based on the same posting, including one that is also for direct infringement against a business partner of M3: Joe Pags Media, LLC ("JPM"). *See* Dkt. 26 ("Mot.") at 1. On May 15, 2026, the Honorable Katharine H. Parker, United States Magistrate Judge, issued a Report and Recommendation recommending that the Court dismiss Global Weather's complaint on that basis. *See* Dkt. 47 ("Report").

For the reasons that follow, the Court agrees with the Report that Global Weather's pursuit of multiple actions constitutes impermissible claim splitting, and that the duplicative actions exposed the parties and the courts to needless costs and burdens. The dismissal, however, is without prejudice. The Court specifically authorizes Global Weather to move,

within 90 days, to reopen this case on the basis that it has since voluntarily dismissed the Texas action in favor of this one.

# I. Background[1]

## A. Factual History

### 1. The Alleged Infringement

Global Weather owns, through written assignment, the copyright to a video (the "Video") depicting water rescues on Interstate 30 in downtown Dallas, Texas, after an August 2022 flash flood. AC ¶¶ 2, 16, 19. The Video was originally filmed and posted on YouTube by videographer Michael Brandon Clement. *Id.* ¶¶ 11–14.

The day after Clement posted the Video, a "substantial portion" of the video was posted without authorization on a Facebook account titled @Joe Pags. *Id.* ¶¶ 3, 5, 25–27. JPM owns and controls that account. *Id.* ¶ 3. The account promotes Joe Pags' talk show and media business. *Id.* ¶¶ 21–22. JPM contracts with M3 for web management and marketing services, including operation of the @Joe Pags Facebook account. *Id.* ¶¶ 4, 24, 31. Under that agreement, M3 has access to the Facebook account. M3 there posts newsworthy videos on JPM's behalf. *Id.* ¶¶ 22–23.

### 2. The Texas Action

On October 25, 2023, Global Weather sued JPM in federal district court in Texas for direct copyright infringement. *See* No. 25 Civ. 1350 (W.D.T.X.) (the "Texas Action"), Dkt. 1.

[1] The Court draws this account from Global Weather's amended complaint, Dkt. 9 (the "AC"), and the docket in the Texas action, No. 25 Civ. 1350 (W.D.T.X.). The Texas Action and the documents filed therein are cognizable on this motion. The Court may take judicial notice of court documents when deciding a motion to dismiss. *See, e.g.*, *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016); *Russ v. Alt. Loan Tr. 2006-43-CB Mortg. Pass Through Certificates 2006-43-CB et al.*, No. 14 Civ. 2990, 2014 WL 3703870, at *2 (S.D.N.Y. July 23, 2014).

Its original complaint alleged that JPM had "actively copied and/or displayed" the water-rescue video on the Facebook account. *Id.* ¶ 4. JPM appeared in that action to oppose Global Weather's motion for a default judgment. Before that, JPM's counsel (who also represented M3) wrote letters to counsel for Global Weather, which were docketed in the Texas Action. *See* Texas Action Dkt. 13. In these, JPM's counsel explained the business arrangement between JPM and M3, and represented that JPM had not operated the allegedly infringing Facebook account. *See* Texas Action Dkts. 13-2 (December 22, 2023 letter); 13-6 (April 3, 2024 letter). JPM's counsel urged that any infringement claim instead be brought against M3 and noted that it could be properly filed in this District. *Id.*

Global Weather did not take JPM up on its proposal that it drop the Texas action against JPM in favor of an action here against M3. It instead amended its complaint in the Texas Action to add M3 as a defendant. *See* Texas Action Dkt. 25 (second amended complaint). The amended complaint (1) maintained the direct infringement claim against JPM, *id.* ¶ 51–60; (2) added M3 as a defendant on that count, *id.*; and (3) added counts against JPM bringing theories of derivative or secondary liability premised on M3's direct infringement, to wit, for contributory, and vicarious, copyright infringement, *id.* ¶¶ 61–71 (contributory infringement), 72–81 (vicarious infringement).

On November 20, 2024, the court presiding over the Texas action denied JPM's motion to dismiss, *see* Texas Action Dkt. 29 at 2–3, but it dismissed the claims against M3 for lack of personal jurisdiction, *see id.* at 9–10. On December 5, 2024, JPM answered the second amended complaint. Texas Action Dkt. 30. It asserted affirmative defenses including license, fair use, lack of standing, failure to register the purported copyright, and estoppel. *Id.* at 11–14.

The Texas Action against JPM is ongoing. *See* No. 25 Civ. 1350 (W.D.T.X.).

**B. Procedural History of This Action**

*a. The New York Action*

On August 22, 2025, nine months after M3's dismissal from the Texas Action, Global Weather filed the instant copyright infringement action against M3. Dkt. 1. Global Weather brings a single claim of direct infringement against M3, based on the same act as in the Texas Action—the posting of the Video on the @Joe Pags Facebook account on August 23, 2022. It claims here that M3, not JPM, "actively copied and/or displayed" a "substantial portion" of the Video on the Facebook account without authorization. AC ¶¶ 5, 26; 38–47. It continues to pursue, in the Texas Action, its direct, contributory, and vicarious infringement claims against JPM. *See* Texas Dkt. 25 at 61–81.

*b. M3's Motion to Dismiss*

On December 8, 2025, M3 moved to dismiss the AC, contending that Global Weather had engaged in improper "claim splitting." *See* Mot. at 1. M3 contended that Global Weather's claim here against M3 and its Texas claims against JPM based on secondary theories of liability would each require it to establish M3's direct infringement. *Id*. at 5. And M3 noted that, insofar as the cases bring direct infringement claims against different defendants based on the same act, they are mutually exclusive, and inconsistent with the prohibition on recovering twice for the same act of infringement. *Id*. at 5–6. Invoking the prudential doctrine against "claim splitting," under which a court can take action against "duplicative litigation," *id*. at 4 (quoting *Sarikaputar v. Veratip Corp.*, No. 19 Civ. 11168, 2021 WL 3914064, at *3 n.5 (S.D.N.Y. Aug. 31, 2021)), M3 asked the Court to stay or dismiss this lawsuit as duplicative of the Texas Action, *see id*. at 3 (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

On December 11, 2025, Global Weather opposed. Dkt. 29. It argued that the rule against duplicative litigation—*i.e.*, the claim-splitting doctrine—only applies to cases filed in the same

court. *Id*. at 7. And it noted that it had no choice but to sue M3 in a district other than Texas, given the lack of personal jurisdiction over M3 there and M3's refusal to consent to Texas jurisdiction. *Id*. It argued that, even if the claim-splitting doctrine was available, the Court should exercise discretion not to apply it, because it was M3's refusal to consent to suit in Texas, which it termed "gamesmanship," that forced it to sue here. *Id*. at 7. Global Weather separately argued that its claims in Texas and New York are compatible, because its secondary liability claims against JPM are compatible with its direct infringement claims against M3 here, and because a jury in Texas conceivably could find JPM directly liable without regard to whether M3 was liable. *Id*. at 12–13. It also argued that the Copyright Act allows it to recover from both defendants, noting the availability of joint and several liability in cases involving multiple infringers. *Id*. at 8–9 (quoting *Arista Records, LLC v. Lime Grp. LLC*, No. 6 Civ. 5936, 2011 WL 1338194, at *3 (S.D.N.Y. Apr. 7, 2011)).

On December 18, 2025, M3 replied. Dkt. 32 ("Reply"). It argued that the rule against duplicative litigation applies to cases filed in different federal courts that seek relief from the same injury, and that it applies to defendants who were in privity, like JPM and M3. *Id*. at 2–3. It disputed that Global Weather could recover twice for the same injury, as the Copyright Act's provision for joint and several liability for joint infringers allows a plaintiff to seek relief from each but not a duplicative recovery. *Id*. at 3–5.

*c. The Report*

Judge Parker's Report recommended that the Court grant M3's motion to dismiss on the ground that Global Weather had improperly split its claims across duplicative actions. Report at 12–13. It noted that the facts and legal claims in the two actions are "substantially similar," *id*. at 7, and that they are duplicative, involving infringement claims based on the identical post against defendants in privity. *Id*. at 9–10. And it found that the rule against splitting a claim across

duplicative actions applies to simultaneous federal-court actions, not merely cases in the same district. *Id*. at 7–8.

The Report found the equities to favor dismissal. Because Global Weather could recover from JPM for M3's infringement under a vicarious-liability or *respondeat superior* theory, it would not be hampered in its ability to recover were its claims limited to those in Texas. *Id*. at 10–11. And Global Weather had elected to pursue the two actions aware of the defendants' joint representation that M3 was responsible for the act alleged as infringement. *Id*. at 12. Global Weather had also waited until discovery in Texas was well underway, with significant litigation resources expended, before filing this lawsuit. *Id*.

The Report acknowledged that M3's refusal to consent to personal jurisdiction in Texas prevented Global Weather from bringing its claims in a single case. *Id*. at 10. But, it found, that did not justify splitting its claims across two "substantially similar" actions. *Id*. at 7, 10. The dismissal of M3 in Texas had put Global Weather to "a choice: continue the action in this District against M3 and abandon the Texas Action or continue the Texas Action against JPM and [forgo] this one." *Id*. at 12. It could not rightly, however, "engineer a second bite at the apple" by "filing a virtually identical complaint in this District and simultaneously maintaining its theory of secondary liability against JPM" in Texas. *Id*. at 10. It recommended dismissal without prejudice. *Id*. at 13.

On May 29, 2026, Global Weather timely objected to the Report. *See* Dkt. 51 ("Obj."). On June 12, 2026, M3 responded. Dkt. 55.

## II. Discussion

### A. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

U.S.C. § 636(b)(1)(C). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Carlson v. Dep't of Just.*, No. 10 Civ. 5149 (PAE) (KNF), 2012 WL 928124, at *1 (S.D.N.Y. Mar. 19, 2012) (citation omitted); *see also Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

Where specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error. *See Jones v. Smith*, No. 9 Civ. 6497 (PAE) (GAY), 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases).

### B. Application

#### *a. Applicability of rule against duplicative litigation*

The rule against duplicative litigation applies to actions "on the same subject in the same court, against the same defendant at the same time." *Curtis*, 226 F.3d at 138–39. Global Weather objects on two grounds to the Report's conclusion that the rule applies here. First, it argues, JPM and M3 are not in privity, such that the two actions are not against the "same defendant" and are not duplicative. Obj. at 9–15. Second, it argues, the rule does not apply where a procedural bar (lack of personal jurisdiction) prevented the plaintiff from consolidating its claims in the same action. *Id.* at 5–9. The Court addresses these in turn.

##### i. Privity

The privity concept, familiar from claim preclusion, applies to the rule against duplicative litigation, insofar as the rule requires that two allegedly duplicative suits be against the same defendant. *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 506–07 (2d Cir.

2019); *see also Wang v. Ren*, No. 20 Civ. 4216, 2023 WL 1977233, at *1 (2d Cir. Feb. 14, 2023). "Generally, an employer-employee or agent-principal relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." *Rosas v. Shorehaven Homeowners Ass'n, Inc.*, No. 23 Civ. 4052, 2024 WL 1120638, at *4 (S.D.N.Y. Mar. 14, 2024) (cleaned up) (quoting *Reininger v. N.Y.C. Transit Auth.*, No. 11 Civ. 7245, 2016 WL 10566629, at *4 (S.D.N.Y. Dec. 22, 2016)).

On the facts alleged here, M3 was clearly JPM's agent with respect to the Facebook account that committed the alleged infringement. "An agency relationship is formed when a principal 'manifests assent to an agent that the agent will act on the principal's behalf and be subject to the principal's control' with respect to a particular task, 'and the agent manifests assent to the same.'" *Consumer Fin. Prot. Bureau v. Sasson*, No. 24 Civ. 554, 2025 WL 1554514, at *2 (2d Cir. June 2, 2025) (summary order) (quoting *In re Nine West LBO Sec. Litig.*, 87 F.4th 130, 148 (2d Cir. 2023)). As alleged, JPM contracted with M3 to operate the @Joe Pags Facebook account, AC ¶¶ 4, 24, 31, subject to JPM's ownership and control, *id.* ¶ 3. Under that contract, M3 posted videos on JPM's behalf. *Id.* ¶ 31. And it is undisputed that M3 acted as JPM's agent in managing the Facebook account. Global Weather so acknowledges in pursuing joint and several liability. *See* Obj. at 18 n.5 (arguing that the two are jointly and severally liable because "both agents and their principals must be held jointly accountable for their tortious conduct").

In assessing privity, the Court next considers whether the relationship between the principal (JPM) and the agent (M3) was such as to bar separate lawsuits against them. *See Sacerdote*, 939 F.3d at 507–08. The Supreme Court has identified six categories of recognized

exceptions to the ordinary rule that a lawsuit does not bar suits by (or against) non-parties. These center on whether the legal interests of the party and non-party were in harmony:

> (1) agreements by a nonparty to be bound by the determination of issues in an action between others; (2) certain pre-existing substantive legal relationships based in property law between the nonparty and the party, such as preceding and succeeding owners of property, bailee and bailor, and assignee and assignor; (3) representative suits where the nonparty's interest was adequately represented by a party with the same interests, such as class actions and suits brought by trustees, guardians, and other fiduciaries; (4) when a nonparty has assumed control over the litigation in which the judgment was rendered; (5) when a nonparty is acting as a proxy, agent, or designated representative of a party bound by a judgment; and (6) when a statutory scheme expressly forecloses successive litigation by nonlitigants, so long as the scheme comports with due process.

*Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008) (as distilled in *Sacerdote*, 939 F.3d at 506).

In sum, a defendant's litigation interests must have been "adequately represented by those in the first suit who are 'vested with the authority of representation.'" *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (summary order); *see also Taylor*, 553 U.S. at 894. The Report recognized these standards, *see* Report at 9 (citing *Barclay*, 131 F. App'x at 779), notwithstanding Global Weather's claim to the contrary, *see* Obj. at 10–12. And as the Report also recognized, Report at 9–10, a party's representation of a nonparty is "adequate" for privity purposes where "(1) [t]he interests of the nonparty and her representative are aligned; and (2) either the party [in the first suit] understood herself to be acting in a representative capacity [of the nonparty] or the original court took care to protect the interests of the nonparty." *Sacerdote*, 939 F.3d at 510 (quoting *Taylor*, 553 U.S. at 900). Adequate representation often also requires "(3) notice of the original suit to the persons alleged to have been represented." *Taylor*, 553 U.S. at 900; *see also Sacerdote*, 939 F.3d at 510.

Those standards are easily met here, as the Report concluded. *See* Report at 9. JPM and M3's interests are in fact uncommonly aligned. In combatting the claims of direct infringement brought in each case, JPM's defense in the Texas Action and M3's defense here would have an

overriding interest in defeating that a portion of the Video was in fact posted on the @Joe Pags Facebook account, or, if it was, that that act constituted copyright infringement. *See* Reply at 7–8. And, because both cases include claims that presuppose M3's direct liability (the claim here and the derivative claims against JPM in Texas), both defendants would have an interest in defending against that assertion. That JPM and M3 have common counsel, who jointly represented the two when both were in the Texas Action, underscores the mutuality of interests. And there is no argument that M3's interests were unrepresented in the Texas Action. On the contrary, M3—until its dismissal—was a party to that action and represented by its present counsel. Even before M3 was added to that lawsuit, M3's counsel, in December 2023, contacted Global Weather to claim responsibility for posting the video. *See* Texas Dkt. 13-2.

The Court therefore rejects Global Weather's objection claiming a lack of privity.

ii. Procedural bar

Global Weather also objects to the Report's conclusion that the rule against duplicative litigation applies. It contends that the rule does not bar simultaneous duplicative actions that cannot be consolidated because of a procedural barrier—the lack of a forum where there was personal jurisdiction over both defendants. Obj. at 5–9. It notes that the dismissal of a first-filed suit on personal jurisdiction grounds does not claim-preclude the filing of a second lawsuit. *See, e.g.*, *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019), *aff'd*, 825 F. App'x 55 (2d Cir. 2020) ("[A] dismissal for lack of personal jurisdiction does not constitute an adjudication 'on the merits' for claim preclusion [] purposes.").

The Second Circuit has not addressed whether the rule against duplicative litigation applies to cases arising where a consolidated action is procedurally barred. In some cases, courts in other Circuits have declined to apply the rule in this circumstance. *See, e.g.*, *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 84 F.3d 1388, 1392 (11th Cir. 1996) ("[T]he general rule

against splitting causes of action does not apply when suit is brought in a court that does not have jurisdiction over all of a plaintiff's claims."); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Deriv. Litig.*, No. 8 Md. 1916, 2018 WL 11251118, at *5 (S.D. Fla. Aug. 13, 2018) ("This exception logically extends to the situation where the first court lacked personal jurisdiction over at least some of the defendants named in the second filed suit."). Those rulings align with the *res judicata* principle that "[w]hen the court in the first case has never exercised personal jurisdiction over a party, no judgment that might have been entered would be binding on that party." *Coker v. Norfolk S. Corp.*, No. 18 Civ. 1364, 2019 WL 398704, at *3 (N.D. Ala. Jan. 31, 2019).

This case, however, presents a distinct situation. Given the coterminous claims in the cases and the relationship between M3 and JPM, there is a substantial likelihood—depending on the trajectory of the Texas case—that the outcome in Texas would have a *res judicata* effect on Global Weather's ability to pursue its claim here. And the doctrine prohibiting claim splitting is part of *res judicata*, insofar as, in measuring duplication, it inquires "whether the first suit, assuming it were final, would preclude the second suit." *Id*. at *3 (citation omitted). Global Weather is wrong therefore to claim that the rule against duplicative litigation is categorically inapplicable to cases that cannot be consolidated due to personal jurisdiction restrictions. *See* Obj. at 7–8. That rule still logically has a role to play where "the first suit, assuming it were final, would preclude the second suit." *Coker*, 2019 WL 398704, at *3 (citation omitted). And the cases on which Global Weather relies, which allowed simultaneous claims to proceed against defendants in different venues on account of personal jurisdiction limitations, entailed claims that did not present, or at least clearly present, that circumstance. *See, e.g.*, *Azima v. Dechert*

*LLP*, No. 22 Civ. 8728, 2024 WL 4665106, at *44 (S.D.N.Y. Sept. 26, 2024); *Rumbough v. Comenity Capital Bank*, No. 18 Civ. 10155, 2018 WL 4293309, at *2 (11th Cir. Sept. 10, 2018).

Here, in contrast, whether Global Weather wins or loses in Texas, the outcome there has high potential to preclude this lawsuit—depending, of course, on factors including the questions put to the jury and the specificity of its verdict. Were Global Weather to lose in Texas on its secondary theories of liability premised on direct infringement by M3, for example, that verdict could bar it from pursuing its claim here. *See Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) ("[T]he normal agency rule of respondeat superior applies to copyright infringement by a servant within the scope of his employment."); *accord Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 897 (2d Cir. 2016); *see Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000) ("[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). And were Global Weather to prevail in Texas and obtain full recovery, that, in turn, could bar it from pursuing this action under the established principle that "a plaintiff cannot recover twice for the same injury." *United States v. Zan Mach. Co.*, 803 F. Supp. 620, 623 (E.D.N.Y. 1992) (citing *Phelan v. Local 305 of the United Ass'n of Journeymen*, 973 F.2d 1050, 1063 (2d Cir. 1992); *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)). Other scenarios can be imagined that would likewise have preclusive effect on this litigation.

The Report was therefore correct to find the rule against duplicative litigation implicated here.

*b. Remedy*

Global Weather's inability to sue both defendants in the same location does, however, inform the proper remedy. A remedy that forced Global Weather to elect a defendant to

pursue—while irrevocably foregoing any opportunity to pursue the other—would unfairly restrict its range of motion. For that reason, the doctrine in this area affords a district court flexibility to "administer its docket so as to avoid duplicative litigation in any manner it chooses." *Barclay*, 131 F. App'x at 779. Outright dismissal may be appropriate, but courts may alternatively, *inter alia*, dismiss claims without prejudice to renewal, or stay the second action pending developments in the first. *See Curtis*, 226 F.3d at 138; *Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403 (N.D.N.Y. 2005). In choosing a remedy, the Court's charge is to "consider the equities of the situation." *Curtis*, 226 F.3d at 138.

The Court here does not find here the gamesmanship that can warrant outright dismissal. *Cf., e.g.*, *Branded Apparel Grp. LLC v. Muthart*, No. 17 Civ. 5956 (PAE), 2018 WL 4308545, at *4–5 (S.D.N.Y. Sept. 10, 2018); *McFarlane v. Iron Mountain Info. Mgmt. Servs., Inc.*, No. 17 Civ. 9739, 2018 WL 941748, at *2 (S.D.N.Y. Feb. 16, 2018) (dismissing complaint the Court termed a "thinly-veiled attempt to expand plaintiff's legal rights"). To be sure, Global Weather was on notice of M3 and JPM's joint contention that M3 was the appropriate defendant, *see* Texas Action Dkt. 13-2 (December 22, 2023 letter); Texas Action Dkt. 13-6 (April 3, 2024 letter), but it elected to continue litigating in Texas, on claims substantially overlapping with those here, and did not initiate this case until that case was far along in discovery. Report at 12. That approach created an obvious risk of duplicative litigation, imposing costs and burdens on the parties, counsel and the Court. On the other hand, Global Weather was not under any obligation to defer to defendant's suggestion that it proceed solely against M3. And it tried to bring a consolidated case against both defendants, and when that failed, although neither defendant had an obligation to consent to personal jurisdiction in a jurisdiction foreign to it, *see* *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2045 (2023) (Jackson, J., concurring) ("[T]he

personal-jurisdiction right belongs to the defendant."), either could have obviated this problem by doing so. Global Weather was also understandably reluctant to forgo its right to sue M3 by holding off filing this lawsuit past the limitations period. *See* Obj. at 23 (noting Copyright Act's three-year limitations period). There are thus equities in both directions.

The Court's judgment is to dismiss the case, but in a manner aimed at maximizing the prospects that Global Weather's infringement claim will be resolved in a single forum and without further duplication of work. The dismissal is without prejudice, as the Report recommended. The Court will give Global Weather the right to move to reopen this case within 90 days, and will grant that motion provided that Global Weather has, by then, voluntarily dismissed the Texas Action. Should, however, Global Weather continue to pursue the Texas Action beyond that point, the Court would only under exceptional circumstances grant a motion to reopen this action.

The Court separately, in strong terms, encourages Global Weather, M3, and JPM to discuss, with urgency, a consensual resolution of this controversy.

**CONCLUSION**

For the foregoing reasons, the Court adopts Judge Parker's Report and dismisses this case, without prejudice.

SO ORDERED.

Paul A. Engelmayer

Paul A. Engelmayer
United States District Judge

Dated: September 22, 2026
New York, New York